**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

AGROVANA, LLC,

      Plaintiff and Counterclaim-Defendant,

v.

CONGO BRANDS LLC,

      Defendant,

and

PRIME HYDRATION, LLC,

      Defendant and Counterclaim-Plaintiff.

Civil Action No. 1:24-cv-12400 JDS

**LEAVE TO FILE GRANTED ON 1/6/25**

## FIRST AMENDED COMPLAINT AND JURY DEMAND

This action, for breach of contract and violation of G.L. c. 93A, §11 arises out of the defendants' willful breach and repudiation of a contract for the sale of goods. As a result of the defendants' inability to sell their product at the rate they projected, they initially convinced Agrovana to exercise forbearance in connection with its contractual rights by substantially extending the delivery date on Agrovana's product. Thereafter, the defendants raised a series of pretextual objections to the quality of the goods that Agrovana sold and delivered, and engaged in a series of willful misrepresentations and contractual objections designed to string along Agrovana and coerce additional concessions to which the defendants were not entitled.  These included, but were not limited to, raising objections that amounted to trade libel against Agrovana's product and objecting to product which the defendants themselves had inspected and approved. These knowingly false allegations were capped off by the defendants' extortionate demand that Agrovana *pay them* over $3,000,000 at a time when the defendants were failing to pay sums that

they unquestionably owed to Agrovana. Accordingly, Agrovana seeks to recover for the defend-ants' willful breach of contract and their unfair and deceptive acts and practices.

## PARTIES

1.      Plaintiff Agrovana, LLC is a Delaware LLC with its principal place of business in Boston, Massachusetts.

2.      Defendant Prime Hydration, LLC is a Delaware limited liability company with its principal place of business in Louisville, Kentucky.  Upon information and belief, the sole member of Prime Hydration, LLC is Drink Prime Holding Company LLC.  Drink Prime Holding Company LLC is a Delaware limited liability company with its principal place of business in Louisville, Kentucky.  Upon information and belief, the members of Drink Prime Holding Company LLC are Max Clemons, Trey Steiger, Solaris UK Holdings Limited, Logan Paul, Jeffrey Levin, Mams Taylor, and the Jeffrey 2023 Trust.

3.      Defendant Congo Brands LLC is a Delaware limited liability company with its principal place of business in Louisville, Kentucky.  Upon information and belief, it is a subsidiary of  Congo Brands Holding Company LLC.  Congo Brands Holding Company LLC is a Delaware limited liability company with its principal place of business in Louisville, Kentucky. Upon information and belief, the members of Congo Brands Holding Company LLC are Max Clemons and Trey Steiger. In this First Amended Complaint, the term "Prime" also encompasses Congo unless the context clearly demonstrates otherwise.

4.      This lawsuit was originally filed in the Massachusetts Superior Court. Nevertheless, this Court has jurisdiction pursuant to 28 U.S.C. sec. 1332 insofar as there is complete diversity among the parties and the amount in controversy exceeds $75,000.

## FACTS

*A.      Agrovana agrees to provide Prime with CWP*

5.      Congo is a branding company that markets and sells beverages and food products. In 2022 or thereabouts, it began working with social media celebrities Logan Paul and KSI (Olajide Olatunji) to create the "Prime" brand of sports and energy drinks.

6.      Fueled mainly by their strong social media exposure, Prime became an instant hit. The company literally could not make enough to cover demand.

7.      In mid-2022, Prime contracted with Agrovana to provide various products for incorporation into Prime drinks. Agrovana agreed to supply Prime with coconut water concentrates and powders, which are a key component of Prime drinks.

8.      From 2022 forward, Agrovana supplied Prime with over $70 million in products. None were ever rejected. On information and belief, Prime has used Agrovana's products to produce and sell approximately $1.5 billion in Prime sports and energy drinks.

9.      In order to assure itself of a steady supply of Agrovana's products, Prime entered into a series of binding purchase orders which required Prime to purchase a fixed amount of Agrovana's product on a monthly basis. A true and accurate copy of the documentation evidencing the amount Prime was required to buy is attached hereto as Exhibit A.  Under the contract, Agrovana was obliged to sell, and the defendants to buy, 2,100,000 units (kilograms) of Aayush coconut water powder ("CWP") in six equal monthly shipments of 350,000 units per month beginning in January 2024 and continuing through June 2024. This equaled 25 containers of product each month, with each container amounting to 14,000 units.  Agrovana was also obliged to sell, and the defendants to buy, 2,100,000 units (kilograms) of Nutravedic CWP, consisting of six equal monthly shipments of 350,000 units (25 containers) per month from

January 2024 through June 2024.  The purchase orders for both products collectively totaled

$32,340,000.  In January 2024, Agrovana in fact delivered the agreed-upon product.  As directed

by Prime, Agrovana delivered its product FOB directly to Prime's warehouse in India.  Within a

few business days of delivery, Prime would receive from Agrovana a Certificate of Analysis

(COA) attesting to the composition of the product as determined by an independent testing

laboratory. Upon Prime's receipt of the COA, title to the goods passed to Prime.  No goods were

ever rejected by Prime or returned for quality issues until July 2024 when Prime's financial

problems arose.

10.     By agreeing to a series of purchase orders in advance, Prime was able to obtain a

reliable supply of critical product at a fixed price at a time when it was growing so fast that

getting enough product on to the shelves was a critical challenge. In reliance on the purchase

orders, Agrovana made commitments to its own vendors, who ramped up their manufacturing

capacity. Because Prime had committed to purchase Agrovana's vendors' full CWP capacity,

Agrovana did not actively seek out new customers for its product.

11.     As part of the contract, Agrovana agreed to arrange and pay for warehouse space

in the U.S. for up to one month's supply of CWP that Prime had purchased from the company.

Later in 2023, Agrovana insisted and Prime agreed that Agrovana's continued payment of

warehousing costs (i) was conditional upon Prime maintaining a minimum order of 40 containers

per month and (ii) would be limited to the space needed to store 40 containers.

B.      *Prime's sales slump; Prime approaches Agrovana about modifying delivery*

12.     Sometime in early 2024 or thereabouts, sales of Prime's drinks sputtered,

apparently as a result of normal seasonal fluctuations, of the fading popularity of Paul and KSI,

and of the diminishing effectiveness of its on-line marketing.

13.     By late 2023, Prime's financial condition was such that it was making partial payments to Agrovana for products already sold and delivered and requesting forbearance on outstanding balances. Prime at that time cited cash flow issues and told Agrovana that it was working to secure credit lines to pay the outstanding invoices. These and similar representations continued through early 2024, during which time Prime continued to accept delivery of the products without complaint.

14.     On February 14, 2024, Wyatt Bryant, Prime's VP of Manufacturing and Innovation, sent Agrovana's Tim Panagopoulos a text message. The text said, in relevant part, that Prime was "sitting on heavy inventory still" and needed to cancel orders. In a subsequent call, Mr. Bryant said that Prime had a 'big problem' with its sales forecast and needed to cancel all outstanding purchase orders. Mr. Panagopoulos informed Mr. Bryant in no uncertain terms that the companies had a binding deal and he had no intention of 'cancelling' anything. However, after discussion, the parties in April 2024 agreed to push out the dates on delivery of the product such that Agrovana would agree to ship lesser amounts each month through Q1 2025. Under the revised delivery schedule, accepted by Agrovana, Prime agreed to accept at least the following production in 2024-25:  April, 10 containers; July, 8 containers; August, 8 containers; September, 10 containers; October, 10 containers; November, 22 containers; December, 32 containers; January 2025, 10 containers; February, 25 containers; March, 30 containers.  Each container consists of 14,000 kilograms of CWP and under the contract each container costs Prime $107,800.

15.     As of the time that Prime and Agrovana agreed to the modified delivery schedule in April 2024, Prime was already in arrears. In January 2024, Agrovana had delivered a total of 50 containers of product and in February it had shipped 35 containers of product.  In June,

Agrovana delivered 10 more containers of product.  Of these 95 containers of product, Prime in fact paid for 59 containers. Hence, as this First Amended Complaint is written, Prime owes Agrovana $3,880,800 for 36 containers of completed product that Agrovana shipped and Prime accepted.  A list of the various shipments and the amounts due is attached as <u>Exhibit B</u>.  It bears emphasis that none of these shipments have been subject to any complaint from Prime; the disagreement over the quality of Agrovana's product detailed below exclusively encompasses orders that Prime previously accepted and paid for. In addition, through July 1, 2024, finance charges and storage fees that Agrovana paid to three warehouses in the US to store product previously delivered to Prime brought the total amount due to owed Agrovana to $4,548,682, an amount that has increased on a monthly basis and will continue to increase as additional finance charges accrue.

        C.     *Prime's complaints about Agrovana's product and its pretextual refusal to accept product it ordered*

16.      Since April 2024, Prime has also breached the executory accord that lengthened the delivery schedule by refusing to accept delivery of Agrovana's product on the agreed-upon schedule based on a pretextual claim that its products are defective. Prime first complained to Agrovana about these alleged flaws in February of 2024. In particular, Prime focused on the minimal presence of dark scorched material or 'spots' in some of the product Agrovana supplied. These consist primarily of minute specks of organic, caramelized coconut. These 'spots' are entirely safe for human consumption, as they are the inevitable result of the process of heating the coconut water to turn it into a powder, a process known as spray drying. They are present in Agrovana's product in concentration that is far less than what relevant FDA standards allow. More to the point, they have always been present in Agrovana's products, and they will be present in any replacement product because they are a naturally occurring by-product of the

process used to create CWP and not an indication of impurity.  In any event, these 'spots' would be removed by the ordinary filtration and processing methods used in creating the finished drink. Thus, the by-products would not be present in the finished drink. Indeed, at no time (whether in March 2024 or subsequently) has Congo/Prime claimed that any consumer actually saw or complained about any defect in the finished drink which could be linked to Agrovana's products.

17.     In July 2024, Prime once again raised issues about the alleged quality of Agrovana's products. Prime's newer complaints focused again on spots of scorched materials in the product. Without in any manner conceding that its product was non-conforming with the agreed specifications, Agrovana hired an independent consultant to review the processes of its manufacturers.  Agrovana also requested information from Prime/Congo to substantiate its assertions, including any customer complaints, trend analyses concerning customer complaints, and documents concerning any investigations performed by Prime/Congo into the issue.  To date, Prime/Congo has refused to provide any such substantiation.

18.     Given that Prime previously accepted over $70,000,000 of *identical* product from Agrovana and then ordered another $32,000,000 more of it, Prime's current complaints are manifestly pretextual. Prime's drastic reduction in its sales means that it cannot immediately use the product that it agreed to buy.  Indeed, Prime's sales problems are such that it was recently sued for $67,000,000 in the Delaware Chancery Court by its bottler after Prime reneged on a deal for production and bottling of its product.

19.     Most recently, Prime's attorney incorrectly claimed in a letter dated August 2, 2024 that Agrovana's previously delivered product was not in conformance with Prime's purported standards, and claimed that the defendants "have a reasonable belief that all CWP not yet delivered to the United States fails to conform to acceptable standards due to the failed

7

systems in place." The defendants, however, never shared their 'internal specifications' for the product prior to March of 2024. The first time that Prime sent Agrovana its Standard Operating Procedures (SOP's) containing its protocol for inspection and acceptance of product was in July 2024. None of these purported internal standards materially deviate from Agrovana's standards. In fact, sec 5.4.1 of Prime's SOP's provides that Prime is supposed to test the product prior to moving it into inventory. Each pallet of product delivered in India receives a Certificate of Analysis from an independent lab, and Prime has the opportunity to test the product when it is delivered. Prime's purported rejection of the product *after* moving it into inventory was based on testing samples that were many months old. On information and belief, all of these samples were shipped to the United States on unrefrigerated container ships, then stored in warehouses in which (by Prime's own admission) the temperatures sometime ranged up to 100 degrees Fahrenheit. In some instances, Prime tested and complained about expired product.

20.    The August 2 letter from Congo's attorney also demands "payment of $3,188,400.94 for the failed CWP lots already delivered to the United States." Since much of the product that Congo was claiming to reject and to demand compensation for had been delivered months ago, the purported rejection was untimely and commercially unreasonable on multiple grounds, including the fact that a portion of the CWP for which Congo sought compensation had already expired or was about to. The letter also stated that Agrovana was no longer an 'approved vendor' and leaves no doubt that Congo/Prime will not accept delivery of the rest of the product that they are contractually required to accept

21.    Equally important, Agrovana agreed in July of 2024—prior to Prime's purported rejection-- to review and revise its product standards and to change its manufacturing and inspection procedures to address Prime's expressed desire to revise the specifications for the

8

product. To aid in the process, Agrovana hired an independent consultant to review the

production, quality control, and related procedures at Agrovana's manufacturers. Agrovana

made Prime aware of these efforts in July 2024, and requested information to assist in those

efforts. Prime refused then—and has refused to this day—to provide any of the requested

information. Nevertheless, Agrovana produced a revised set of protocols which it communicated

to Prime (along with voluminous supporting information).

22.     Despite these efforts, Prime has refused delivery of 8 shipments of CWP with a

total retail price of $862,400 that Agrovana has attempted to deliver ("the product rejection

claim"). This product was manufactured under revised guidelines that Prime approved in May

2024. Prime's warehouse in India has literally turned away trucks attempting to deliver CWP that

Prime ordered, and Prime has informed Agrovana that its facility in India will continue to refuse

any future deliveries – an instruction that directly repudiates Prime's executed purchase orders

and the April 2024 accord.

###### D.     *Prime's Anticipatory Breach of the 2024 Accord*

23.     In addition to refusing product that has been manufactured and identified to the

contract, Prime has informed Agrovana that it will continue to refuse any future deliveries of

CWP that Prime previously ordered—an instruction that directly repudiates Prime's executed

purchase orders and the April 2024 accord. In the April 2024 accord, Prime agreed to accept

delivery of an additional 147 shipments of CWP over and above the 95 containers already

accepted and the 8 containers it refused: 32 in December 2024, 10 in January 2025, 25 in

February 2025, and 30 in March 2025. Agrovana estimates its lost profits from these deliveries

at approximately $5,689,320.00. If the breach of the executory accord had the effect of

reinstating the original contract (as Agrovana contends), its damages are significantly greater.

Under the original contract, Prime agreed to accept an additional 197 containers of CWP over and above the containers already accepted and refused.  In that case, Agrovana estimates that its lost profits at approximately $7,624,820.00.

## COUNT ONE
### Breach of Contract—Goods sold and delivered

24.    The plaintiff reincorporates each of the foregoing paragraphs as if set forth here in full.

25.    Since January 2024, Prime has failed to pay Agrovana for 36 containers of product. As described in paragraph 15 above, none of these shipments are the subject of any dispute as to the quality of the goods sold, delivered, and accepted.  *See* Exhibit B hereto.

26.    Prime's failure to pay for the goods sold and delivered constitutes a breach of contract.  Prime owes Agrovana $3,880,800 for these goods plus warehousing and finance charges, bringing the total owed through July 1, 2024 to $4,548,682.  Finance charges continue to accrue.

## COUNT TWO
### Breach of Contract— Product Rejection

27.    The plaintiff reincorporates each of the foregoing paragraphs as if set forth here in full.

28.    As detailed in paragraph 22, Agrovana has received from its suppliers 8 containers of CWP which it has attempted to deliver to Prime.

29.    Prime has refused to accept delivery on the pretext that it has 'no confidence' that the goods conform to contract specifications. At no time has Prime examined the product or tested it to ascertain whether the goods do in fact conform to the contract.

30.     The goods in question have been identified to the contract, conform to the specifications of the parties' contract and are of merchantable quality.

31.     Prime's refusal to accept the goods and to pay for them constitutes a breach of the parties' contract.  Agrovana has been harmed in an amount to be demonstrated at trial but currently believed to be not less than $862,400.

## COUNT THREE
### Anticipatory Breach/Repudiation

32.     The plaintiff reincorporates each of the foregoing paragraphs as if set forth here in full.

33.     As described above, the April 2024 executory accord between Agrovana and Prime extended the shipments through March 2025 and reduced the number of containers of product that Prime was required to accept.

34.     The defendants breached that executory accord by *at least* (i) refusing to accept the work in progress, as stated in Count II, and (ii) by stating, unequivocally and in writing, that they would not accept any future shipments of CWP from Agrovana.

35.     Prime's repudiation has substantially impaired the value of the contract. As such, Agrovana is entitled to suspend its performance and resort to any remedy for breach permitted by law, including this suit.

36.     The defendants' breach and repudiation of that executory accord reinstated the original contract, which the defendants are now in breach of. The plaintiff has been harmed by that breach in an amount to be established at trial, but currently believed to include lost profits of not less than $7,624,820.00.

11

37.     In the alternative, and assuming contrary to fact that the April 2024 accord remains in effect, the plaintiff has been harmed by the defendants' repudiation in an amount to be established at trial, but currently believed to include lost profits of not less than $5,689,320.00.

## COUNT FOUR
### Declaratory Judgment
### (Product Complies with Industry Standards and Contract Requirements)

38.     The plaintiff reincorporates each of the foregoing paragraphs as if set forth here in full.

39.     The defendants, both directly and through their attorney, have raised issues concerning the commercial fitness of the products which Agrovana marketed. The defendants' lawyer has described the purported flaws as creating "insecurity with respect to whether Agrovana will duly perform its obligations under purchase orders and arrangements" with the defendants. As a result, an actual controversy has arisen between the parties.

40.     Agrovana therefore seeks a declaratory judgment declaring (i) that the product which Agrovana sold to the defendants met prevailing industry standards and the requirements of the contract; (ii) that the particular lots which the defendants objected to are in all respects consistent with product that Agrovana had previously sold and delivered, and which defendants had accepted; and (iii) that Agrovana was at all relevant times willing and able to perform its contract with the defendants.

## COUNT FIVE
### Unjust enrichment/Quantum meruit

41.    The plaintiff reincorporates each of the foregoing paragraphs as if set forth here in full.

42.    In the alternative to Counts I-III, Agrovana provided goods and services, including paying for Prime's U.S. warehouse space, for Prime.  The goods and services benefited Prime.

43.    The goods and service were provided under circumstances that it would be inequitable for Prime to obtain the benefits of them without paying for them.

44.    Agrovana is entitled to compensation for providing these goods and services in an amount to be determined at trial.

## COUNT SIX
### Unfair and Deceptive Trade Practices (G.L. c. 93A, § 11)

45.     The plaintiff reincorporates each of the foregoing paragraphs as if set forth here in full.

46.    As described above, the defendants did not merely commit a willful breach of their contract with Agrovana as a result of their inability to sell their product at the rate they projected.  The defendants also engaged in a series of misrepresentations and pretextual contractual objections designed to string along Agrovana and coerce additional concessions to which the defendants were not entitled.  These included, but were not limited to, raising objections that amounted to trade libel against Agrovana's product and objecting to product which the defendants themselves had inspected and approved. These knowingly false allegations were capped off by the defendants' extortionate demand that Agrovana *pay them* over $3,000,000 at a time when they were failing to pay sums that they unquestionably owed to Agrovana, a demand that was

clearly advanced to extort concessions from Agrovana and to serve as a pretext for the defendants to renege on their contractual commitments.

47.     These unfair and deceptive acts and practices occurred in the course of trade or commerce and were knowing or willful in nature, justifying double damages.

WHEREFORE, Plaintiff requests that this Honorable Court:

A.  Award, on Counts One, Two, Three, Five and Six all damages and other compensation to which the plaintiff is legally entitled, including but not limited to prejudgment interest from the date of the defendants' breach and the costs of this action;

B.   Issue a declaratory judgment on the terms requested above in Count Five;

C.  Award, on Count Six, all damages and other compensation to which the plaintiffs are legally entitled, including but not limited to (i) prejudgment interest from the date of the defendants' breach, (ii) reasonable attorneys' fees and costs of this action, and (ii) double damages as a result of the willful nature of the defendants' unfair and deceptive acts and practices, and

D.  Award pre-judgment interest from the date of breach or, in the alternative, from the date of this suit, in an amount to be determined by the Court; and

E.  Award any other relief to which the plaintiff is entitled in law or in equity, or which this Honorable Court deems just under the circumstances.

**The plaintiff demands a trial by jury on all counts so triable.**

Respectfully submitted,

AGROVANA, LLC

By its Attorney,

*/s/ Edward Foye*

_____
Edward Foye (BBO#562375)
efoye@arrowoodllp.com
ARROWOOD LLP
10 Post Office Square, 7th Floor South
Boston, MA  02109
Tel:  617-849-6200/Fax: 617-849-6201

Dated:  January 7, 2025

15