UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AGROVANA, LLC,

      Plaintiff and Counterclaim-
      Defendant,

v.

CONGO BRANDS LLC,

      Defendant,

      and

PRIME HYDRATION, LLC,

      Defendant and Counterclaim-
      Plaintiff.

Civil Action No. 1:24-cv-12400

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT AGROVANA,
LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
COMPEL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

Respectfully submitted,

**Agrovana, LLC,**

By its attorneys,

*/s/ Edward Foye*
Edward Foye (BBO #562375)
Raymond P. Ausrotas (BBO #640315)
Patrick McCooe (BBO #686223)
ARROWOOD LLP
One Bowdoin Square, Floor 300
Boston, Massachusetts 021114
Tel:    (617) 849-6216
Email*: efoye@arrowoodllp.com*
        *rausrotas@arrowoodllp.com*
        *pmccooe@arrowoodllp.com*

Dated:  July 28, 2025

Pursuant to Fed. R. Civ. P. 37(a)(3)(B) and L.R. 37.1(b), Plaintiff Agrovana, LLC ("Agrovana") submits this memorandum of law in support of its motion to compel production of documents by Defendant Prime Hydration, LLC and Defendants and Counterclaim Plaintiff Congo Brands LLC (together, "Prime").

There can be no reasonable doubt that Prime's document production is seriously deficient. Agrovana, a two-person operation, produced over 42,000 pages of documents, the great majority of them direct communications with Prime. By contrast, Prime, a global operation with dozens of employees, has produced only about half that. Certainly, the adequacy of a document production is not judged by the pound, but in this instance the numbers are a fair indicia of serious omissions. Recently, one of Prime's warehouses produced under subpoena 28 documents about the handling of Agrovana's product, many of which contained probative information undermining Prime's $3M counterclaim. Prime did not produce a single one of those documents. One of its bottlers produced over 50 pages of directly relevant emails, only 4 pages of which were produced by Prime. Prime has not produced a single text message from the phone of any employee, even though management regularly communicated with Agrovana by text, and presumably with each other as well. Indeed, Prime has frankly admitted that it failed even to conduct a search for substantial swaths of necessarily responsive documents, text messages included. Section I, *infra*, describes the problems with Prime's production and its lack of diligence. Section II excerpts the particular document requests with which Prime should be compelled to comply. Section III discusses the relatively small number of documents that Prime has outright refused to produce, and argues that Prime should be ordered to provide responsive documents.

**Discovery Conferences Conducted Prior to Bringing This Motion**

Agrovana's document requests (served in March, 2025) are submitted as **Exhibit 1**, and Prime's May 7, 2025 responses are **Exhibit 2**. Agrovana began raising concerns about Prime's production soon after it was made. *See* **Exhibit 3.** Pursuant to LR 37.1, Agrovana conducted

formal discovery conferences with counsel for Prime on May 7, 2025; May 16, 2025; June 6, 2025; July 2, 2025; and July 18, 2025. In addition, the parties have exchanged literally dozens of emails (some of them exhibits to this motion) and telephone calls. The sum and substance of many of these discussions are summarized in the argument below. The relationship of the parties has been cordial and professional, and the parties reached agreement on multiple issues.[1] Ultimately, however, Prime has refused to agree to produce critical documents and, when it has agreed to supplement, has failed to follow through on those promises.

### Synopsis of the Parties' Allegations Making Agrovana's Requests for Production of Documents Relevant and Proportional

Agrovana is pursuing this action for breach of contract and violation of G.L. c. 93A, §11. Specifically, Prime failed to pay Agrovana approximately $3.9 million for product sold and delivered, and turned away trucks carrying another $862,400 of product.  First Amended Complaint, January 7, 2025 (Dkt. #25) at ¶¶ 15-22. Prime also repudiated its contract requiring it to purchase another 147 shipments, causing Agrovana lost profits of over $7.5M.  *Id*. at ¶ 23.

As detailed in the Amended Complaint, Prime makes and sells products, primarily beverages and stick packs[2] under the "Prime" brand. Prime sports and energy drink products were at one time among the hottest selling products anywhere. When the market for its products tanked, Prime stopped paying its suppliers. *Id*. at ¶¶ 5-7, 9-12.

Specifically, in mid-2022, Prime agreed to purchase a fixed amount of Agrovana's coconut water powder, or 'CWP,' on a monthly basis. Prime and its vendors then incorporate Agrovana's CWP into sports and energy drinks and market them to the general public, which for a time they did quite lucratively. Through the agreement with Agrovana, Prime secured a reliable supply of CWP at a fixed price. In turn, Agrovana made commitments to its own vendors to ramp up supply, and did not actively seek new customers, in order to meet Congo's requirements.

---

[1]  Among other things, Prime agreed to produce the metadata to its first production of documents, and Agrovana agreed to supplement its production to include documents specifically requested by Prime.
[2]  'Stick packs' are single pouches of powdered concentrate intended to be added to water.

For approximately 18 months, Prime met its obligations, using and paying for the product without objection. Agrovana's vendor delivered the product to Prime's designated warehouse in India, accompanied by Certificates of Analysis ("COA") from independent laboratories attesting to the composition of the product and validating that the CWP met Prime's approved specifications. Prime inspected and accepted the product, moved it into inventory, and then shipped it from India to various warehouses around the world and then to its various bottlers and co-manufacturers ("co-man's") to be turned into finished product.

In late 2023 and early 2024, everything changed. Prime's sales plummeted, causing financial turbulence. In early 2024, Prime for the first time raised quality objections to Agrovana's CWP – CWP that was *identical* to at least $70,000,000 worth of product that Prime had already inspected, approved, accepted and used.

In April of 2024, Agrovana agreed to extend the delivery schedule for the product and to reduce somewhat the total amount of CWP that Prime was obliged to accept. In return, Prime agreed to accept future delivery of over $20,000,000 of CWP. Nevertheless, Prime continued to falter on its payment obligations, 'rejected' product it had previously accepted, and eventually ceased paying Agrovana altogether, ultimately giving rise to this action.

For its part, Prime has counterclaimed.  See Docket #28, filed January 21, 2025.  It alleges that Agrovana failed to comply with certain safety and quality standards, and delivered CWP containing "foreign" substances. Id. at ¶7.  Similarly, Prime claims that Agrovana failed to maintain adequate inspection processes and system controls for CWP, and has demanded $3,130,856.02 in reimbursement for allegedly defective CWP – CWP that Agrovana had received, taken custody of pursuant to the Purchase Orders, inspected, accepted, and in many cases stored for *close to a year* before claiming deficiencies in the product. *See id*. at ¶¶ 12-14 and Ex. 1 thereto at 19 (damages figure).  Prime has also since alleged additional "contamination

and product purity issues" in other lots of CWP, and overall claims that Agrovana's "refusal to provide adequate assurances of future performance" has caused it damages.[3] *Id.* at ¶¶18, 20.

## ARGUMENT

Parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Enargy Power (Shenzhen) Co. v. Wang*, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "'An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond,' to discovery and justifies a motion to compel a party's compliance with Federal Rule 26(a)." *Barron v. Micromobility*, 2025 U.S. Dist. LEXIS 65884, *14-15, 2025 WL 1000179 (S.D.N.Y. April 3, 2025) (citing Fed. R. Civ. P. 37(4)).

As set forth below, Prime has failed to meet its discovery obligations, especially as a Counterclaim Plaintiff in this action. Prime has asserted claims that amount to trade libel against Agrovana's product, and asserted over $3M in damages. Since May, Agrovana has wrestled with Prime to obtain basic, core documents central to this litigation. *See Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 289 (S.D.N.Y. 2024) (describing four months of discovery noncompliance as a length that "warrants the harshest of sanctions, including dismissal or default"). Thus, Prime should be compelled to produce the responsive documents detailed below.

---

[3] This paragraph merely summarizes the allegations in Prime's Answer & Defenses to Plaintiff's First Amended Complaint and Prime's Amended Counterclaim for purposes of document request relevancy determinations below – it does not admit any of them. In fact, Prime's claimed "foreign contaminant" issues actually focus on the minimal presence of dark scorched material or 'spots' in some of the product Agrovana supplied, primarily of minute specks of organic, caramelized coconut entirely safe for human consumption. These spots are the inevitable result of the process of heating the coconut water to turn it into a powder, a process known as spray drying. They are present in Agrovana's product in concentration that is far less than what relevant FDA standards allow, and have always been present in Agrovana's products. They will also be present in any replacement product because they are a naturally occurring by-product of the process used to create CWP and not an indication of impurity. In any event, these 'spots' would be removed by the ordinary filtration and processing methods used in creating the finished drink.

**I.**    ***Prime's Failure to Produce Basic Information.***

    *A.  Prime should be ordered to conduct a diligent search for responsive documents*

Although Prime claims that foreign substance and purity issues with Agrovana's CWP has caused it millions of dollars in damages, it has produced virtually no emails which actually evidence any practical problems with Agrovana's CWP. Prime's counsel has claimed that the company "identified [defective lots] through Congo's review and inspection process along with third-party Eurofins' statistical sampling process," Counterclaim at Ex. 3, p. 3, but very little has been produced evidencing these tests. *See* **Exhibit 4** at 1-2, Prime's lawyer letter to Agrovana. Prime has demonstrably failed to produce communications with warehouses and bottlers <u>about Agrovana's allegedly defective product</u>, and has produced virtually nothing in the way of internal documents discussing the alleged flaws on Agrovana's product.

Prime is not withholding these documents based on any objection. Rather, Prime insists that it is producing everything it can find. The problem is the way they looked for them. According to counsel, the company never specifically searched the email inboxes and outboxes of company leadership to determine who they communicated with and when. **Exhibit 5** at 1. It never searched leadership's phones for text messages.[4] *Id.* Nor did Prime ask the particular employees who directly interfaced with its vendors, particularly those who bottled Prime's drinks, to collect relevant documents.

Instead, Prime unilaterally created a series of search terms and applied them across the company's servers generally.  According to Prime's counsel, the search was for "Agrovana," or "coconut water powder" or "CWP" or "Tim Panagopoulos" or "Hevan Patel." Ex. 5 at 1. Whatever the merits of this search are as a theoretical matter, the results speak for themselves.

Prime's lawyers claim that over 95 lots of CWP were tested in the first part of 2024, Ex. 4 at 2, but Prime has only produced two tests that Prime can locate. Hundreds of thousands of kilos

---

[4]  Prime's counsel stated in May 2025 that the text messages had been downloaded and that a review is underway. However, no such documents have been produced, and it appears from Prime's most recent communications that it is now disclaiming any such intent. Counsel also previously recognized a similar deficiency during parties' LR 7.1 conferences regarding Microsoft Teams messages and agreed to produce them in a readable form, but now apparently takes the position that Prime will not or cannot do so.

of CWP do not transport themselves, but Prime has produced next to nothing about the travel of the product.[5] See **Exhibit 6** at ¶ 2. Apart from the fact that logic dictates that these documents must exist, third-party subpoenas are now providing unassailable proof that these documents do exist, because Prime's warehouses and the bottlers are producing documents – in some cases, centrally relevant documents – that Prime has not. In mid-July, one of Prime's bottlers, WPG, produced over 50 pages of emails and texts with Prime about Agrovana's product; Prime had produced exactly 4 pages of those 50. One email chain acknowledges the quality of Agrovana's product. See **Exhibit 7** (stating Prime is "pleased with the results of the coconut power performance as well") (Boothby email of 3:14 p.m.). Another extended email chain discussed "foreign material" in the finished product that Prime ultimately attributed to consumer mishandling of the product.[6] None of these were produced by Prime. WPG was not alone. A warehouse in Las Vegas, One Solution, produced documents showing that Prime's sales were so abysmal that it allowed thousands of pallets of finished goods to expire, and that dozens of pallets of CWP – all from lots that Prime has not asserted were defective – sat in the warehouse unused until they too expired. See Composite **Exhibit 8** at Bates pages 18, 21-23. The production also showed that Prime was gathering boxes of product, presumably for testing. *Id.* at 7, 10, 16. Prime produced none of these documents, nor has it produced its internal communications showing what sort of testing was done, or what the results were. More recently, Prime's go-to test, Eurofins, produced hundreds of pages of documents, most of which were never produced by Prime, including test results on Agrovana's product.[7] These documents are manifestly central to Prime's own multi-million dollar counterclaim as well as to Agrovana's

---

[5] Prime's burden on its counterclaim will include showing that the product it tested was substantially the same product it received. Prime's counsel a month and a half ago stated that Prime was gathering such documents from OL Logistics, the company that actually did the shipping, but thus far nothing has been produced.

[6] This document was designated Confidential by the producing party but can be submitted to the Court on request.

[7] These documents have been designated 'Highly Confidential' by the producing party, but can be submitted to the Court on request.

complaint. Prime is not withholding these documents under objection; it just won't look for them, apparently because management is too busy with other matters to meet their legal duties.

The cases are clear that a lawyer cannot design a key word search in a logical vacuum and then declare his responsibilities at an end. *See* Charles A. Wright et al., 8B Federal Practice and Procedure (2010 & Supp. 2025) at §2218 at 229-230. "This case is just the latest example of lawyers designing key word searches in the dark, by the seat of the pants, without adequate (indeed, here, apparently without any) discussion with those who wrote the emails." *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135 (S. D. N. Y. 2009). The test for an adequate keyword search is not whether it is a good guess, but whether it *in fact* meets the producing party's burden of turning over all (or nearly all) the requested documents.[8] *In re Seroquel Products Liability Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process . . . . Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness."). *Accord, Victor Stanley, Inc. v. Creative Pipe, Inc*., 250 F.R.D 257 (D. Md. 2008) ("[T]here is a growing body of literature that highlights the risks associated with conducting an unreliable or inadequate keyword search or relying exclusively on such searches.").

Prime's likely rejoinder is that it offered to consider additional search terms if Agrovana cared to suggest them. But that misses the point entirely. Agrovana cannot know what is in documents it has never seen. A key component of a party's obligation to produce documents is to select a search methodology that is reasonably calculated to elicit responsive documents. *See Raine Grp. LLC v. Reign Capital, LLC*, 2022 U.S. Dist. LEXIS 31282, at *2-3 (S.D.N.Y. Feb. 22,

---

[8] Some categories of documents are not easily amenable to keyword searches. For example, Prime's lawyer's letter to Agrovana (Ex. 4 hereto) avers that 95 lots of Agrovana's product was tested with Eurofins, a company specializing in the analysis of food companies. Obviously, all communications about all such tests should have been produced, but were not. It is reasonably possible to guess at what words the parties used in these communications since Agrovana was not part of them.

2022). "In other words, the producing party must search custodians and locations it identifies on its own as sources for relevant information as part of its obligations under Rules 26 and 34." *Id.* Agrovana *cannot* diagnose the problem with Prime's search terms without access to the same internal communications that Prime refuses to produce.[9]

As to how that search should be conducted, there is no need for the Court to endeavor to supervise the document collection process. It is Prime's duty to find responsive documents, given that Prime is in a position to know what it is not producing. At the same time, it will not do much good to order Prime to make a diligent search for the documents described below if Prime thinks that less than a half dozen search terms constitute a "diligent search." Thus, in addition to producing the specific categories of documents listed in Part II, Prime should be ordered to provide a discovery plan to the Court outlining the steps it intends to take to look for the documents it has not produced.

   B.  *Prime should be required to produce Microsoft Teams messages in a comprehensible form*

In Prime's first document production, it produced what appeared to be a series of emails that had been ripped from context – random sentences that were obviously part of a larger whole. *See* Ex. 3; at Congo 023517 ("how we gonna work through $31M of raw material ha ha I still can't gras why Agrovana wouldn't buy it back"); *id.* at Congo 020894 ("are we investigating Agrovana ol [OL Logistics, Prime's shipper] or both?"); **Exhibit 9** (additional examples of out-of-content messages). When Agrovana called Prime's attention to the highly problematic nature of such a production – if one did not know better, it would appear to the untrained eye that content and context had deliberately been removed – Prime identified the snippets as part of longer Microsoft Teams messages chains, and identified a glitch in its document gathering

---

[9]  Given that third parties have recently produced dozens of documents, it appears that Prime and its bottlers, referred to the product as "coconut" rather than "CWP" or "coconut water powder." Prime has agreed to search multiple inboxes for these terms, without committing to produce. But many responsive documents produced by third parties do not contain those terms, so there is no reason to think that the new terms will be a panacea. The answer is to talk to the people who know what sort of documents are not there, and only Prime's lawyers are positioned to do that, and so far they have flatly refused to do so.

procedures as the source of the problem.  Ex. 6 at 1; Ex. 3 at 1.  Prime promised to produce the chains of which these snippets were a part in comprehensible form. *See* Composite **Exhibit 10.**

But it hasn't. Since its initial posture of co-operation, Prime has done an about-face, and claimed that it was not technologically possible to download the Teams messages. That is categorically not so; there is software that will capture the messages, which can then be produced like any other document. *See* **Exhibit 11**. More recently, Prime appears to be claiming that since its search terms only have gathered snippets, snippets are all Agrovana is entitled to.

Presumably no extended argument is needed that relevant information must be produced, and if Prime cannot produce the documents it must find someone who can – or the Court can appoint someone to do it for them. *See Marselux Envtl. Techs. v. Selip S.P.A.,* 2019 U.S. Dist. Lexis 85153 at *34-35 (W.D. Pa. May 21, 2019) (forensic investigation may be ordered where "a litigant has failed to preserve evidence, equivocally responded to discovery or otherwise resisted discovery") (internal quotation and citation omitted). Given the importance of knowing that full and complete teams messaging chains have been produced, the Court should order Prime to produce all responsive Teams messages and any other electronic messages in their native format, including accompanying metadata.

C.  *The Court should order Prime to search for and produce text messages among Prime's leadership*

Agrovana and Prime regularly communicated by text. Indeed, the parties' agreement was made by text and by email. *See* **Exhibit 12,** a series of messages between Agrovana's Panagopoulos and Prime's Sr. VP Bryant that were produced by Agrovana but not by Prime. WGP has produced text messages with Troy Steiger, Prime's CEO that Prime also did not produce. It defies belief to suppose that Prime's executives did not also communicate with each other by text. Indeed, Prime has never asserted otherwise. But it has also not produced a single text message, including messages like those attached as Ex. 12.

Production of text messages is now routine, and there is no support in the cases whatsoever for the proposition that the presence of personal material somewhere in the text chain

justifies non-production of the relevant sections. Production of text messages is now routine, and there is no support in the cases whatsoever for the proposition that the presence of personal material somewhere in the text chain justifies non-production of the relevant sections. See *Wright v. Rio Tinto Am.*, 2021 U.S. Dist. LEXIS 224171, at *7 (D. Utah Nov. 19, 2021); see also *Gipson v. Cincinnati Children's Hosp. Med. Ctr.*, 2021 U.S. Dist. LEXIS 245493, at *12 (S.D. Ohio Dec. 27, 2021). No doubt the executives will need to turn over their phone for imaging, and may need to assist the paralegals in identifying recoverable information, but producing relevant documents is one of the burdens that a party asserting a $3M claim must assume. Prime's apparent failure even to image those phones is, in 2025, inexcusable, and it should be ordered to harvest those messages and produce all relevant documents.

## II.    *Prime's Document Production Responsive to Agrovana's Requests for Production Nos. 3, 4, 5, 14, 20, 25, 26, 27(E), and 32(B)-(D) is Deficient*

"Parties have a duty to produce all documents within their custody or control when responding to a request for production of documents under Rule 34." *Thomas & Betts Corp. v. New Albertson's, Inc.*, 10-11947-DPW, 2012 WL 12552276, at *3 (D. Mass. July 20, 2012) (*citing* Fed. R. Civ. P. 34(a)(1)). "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). "When an objection is made to any document request, or subpart thereof, it shall state with specificity all grounds upon which the objecting party relies." Local Rule 34.1(c)(1). "Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived." *Id*. Here, Prime's production has been deficient in multiple substantive areas set out below, and it should be ordered to produce all responsive documents.

<u>Agrovana's Request for Production No. 3</u>  All communications with Agrovana about the terms under which Prime would agree to purchase Agrovana's CWP, including negotiations about the purchase of the product. For purposes of this request and those that follow, a 'term' includes communications about the price of the product, the quality of the product, and technical specifications for the product, the quantity of the product, or the delivery terms of the product.

<u>*Prime's Response*</u>  *Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith, including the email chain with the subject line "Coconut specs and pricing/Congo Brands."*

Argument: To Prime's credit, its General Objections do not contain the usual shopworn formulae about 'undue burden,' 'relevance,' and the like. *See* Ex. 2 (Prime's responses) at 2-3. Rather, they address such technical issues as waiver of privilege by the production of documents. Thus, Prime effectively agreed to produce all responsive documents. But it didn't, apparently for the reasons discussed in Section I(A), *supra*. Prime did not even produce the contract between the parties, as expressed in Ex. 12 hereto. Prime should be required to produce all such documents.

Agrovana's Request for Production No. 4:  All documents and communications reflecting any modifications to the arrangement between Prime and Agrovana relating to the sale and purchase of CWP.

*Prime's Response:  Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith, including but not limited to the email chain between Prime personnel and Agrovana with the subject line "Revised Plan/CWP Agrovana," the correspondence between Prime/Congo's attorney and Agrovana dated August 30, 2024, wherein Prime notified Agrovana that all Placeholder Purchase Orders with shipment dates after December 1, 2024 were not confirmed, and all communications between Prime personnel and Agrovana regarding the Quality Defects, including but not limited to the email chains with the subject lines "Re: Foreign Object Notification" and "FW: Agrovana Coconut Claim Documentation 7.11.24."*

Argument:  Producing three documents is not the same thing as producing all documents. The request for documents "reflecting . . . modifications" to the parties' arrangement would include internal documents in which leadership discusses such modifications among themselves or in which they inform line managers dealing directly with the warehouses and bottlers about those modifications. However, few if any such documents have been produced by Prime even though the bottlers and warehouses themselves have begun to produce them.

Agrovana's Request for Production No. 5:  All documents concerning your initial approval of Agrovana as a vendor of CWP and all documents evidencing or concerning any evaluation of Agrovana's product and performance. This includes but is not limited to (a) documents generated under or required by the SOP's for Prime's approved supplier program (or any equivalent program conducted pursuant to 21 CFR 117); (b) the SOP's [Standard Operating Procedures] for Prime's vendor qualification or equivalent program; (c) any Ingredient Hazard Analysis or equivalent document in which Prime analyzed the biological, physiological, chemical, radiological, economic, or other risks with regard to Agrovana's CWP.

*Prime's Response:  Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith, including but not limited to Prime/Congo's Vendor Qualification Questionnaire executed by Agrovana as part*

*of Prime's SOPs. Prime/Congo additionally refers Agrovana to the email chain with the subject line "PRIME Supplier Approval New Co-Man completed docs."*

Argument: While Prime was certainly required to produce the documents that Agrovana sent it at the time the parties first did business, Request No. 5 properly seeks a far more substantial production of records that Federal law *requires* Prime to maintain. Pursuant to the Food Safety Modernization Act, 21 U.S.C. 399d, Prime must verify the purity and the quality of it food imports – not from the broker, in this case Agrovana, but from the actual source – including from whom and where it is buying the ingredients, and perform site visits and other steps to evaluate the CWP at issue.[10] These records are obviously relevant and proportional because they document Prime's inspection of the CWP *at the source* throughout the Purchase Order period. Prime is also in no position to complain about the quality of Agrovana's CWP in 2024 if it is the same product that Prime approved in 2022-23. But no such documents have been produced.

Agrovana's Request for Production No. 14:  All documents which concern or contain any information about the quality of any product received from Agrovana. This includes any documents approving Agrovana's CWP for use in Prime's products as well as any documents which express concerns about Agrovana's product.

*Prime's Response:  OBJECTION.  In addition to its General Objections and Reservations, Prime/Congo objects to this Request on the grounds that it is not proportional to the needs of the case. Prime and Agrovana's business relationship was conducted in part over years of email chains with a massive number of communications and documents regarding the quality of Agrovana's CWP and concerns about Agrovana's CWP.  This Request has no limitation to documents related to the quality defects at issue in this lawsuit. The burden of searching for and locating all of these responsive documents would outweigh any conceivable benefit they would have on this Lawsuit.  Subject to and without waiving the foregoing objections, Prime/Congo refers Agrovana to the documents produced herewith.*

Argument: Even Prime concedes that documents concerning or containing information "about the quality of any product received from Agrovana," is relevant. Its 'proportionality' objection amounts to is that there are *so many of them* that it should be allowed to produce only the emails evidencing the problems that Prime complains about. In fact, the very same CWP that

---

[10] The CWP that Agrovana sold to Prime was manufactured by two Indian manufacturers, Nutravedic and Neel Beverages.

Prime complains about was used repeatedly with no problems or issues. While Prime may find it 'disproportional' to produce documents that undercut its counterclaims, they are every bit as relevant as the documents that support its claims. They are relevant because prime made them so, seeking more than $3 million in damages for alleged "quality . . . defects" in Agrovana's CWP. These documents include not only (as Prime would have it) communications with Agrovana, but also with the parties who used the product and the independent testing laboratories that Prime claimed examined it.  All such documents should be ordered produced.

Agrovana's Request for Production No. 20:  All 2023 or 2024 internal communications that in any manner concern (i) your specifications for CWP or (ii) Agrovana's proposed revised specifications communicated in Agrovana's letter of September 13, 2024.

*Prime's Response:  Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith, which include numerous Teams Messages and Email chains between Prime personnel related to these subjects.*

Argument: Request No. 20 specifically seeks internal communications about Prime specifications for the product. Despite Prime's $3M claim that the CWP failed its specifications, Prime knew exactly what the product consisted of, and it must produce the documents that bear on the specifications it designed and on its knowledge of the product. Prime, however, has produced virtually nothing in that regard, although its lawyers have claimed that the decision to reject the CWP (the majority of which Prime had already accepted and moved into inventory) was made after extensive study and testing. See Ex. 4. Obviously any decision to begin rejecting product that one has used for a year and a half on the grounds that the product did not meet specifications must have been the subject of careful deliberations and significant internal communications. All such documents should be ordered produced.

Request for Production No. 25:  All CAPA reports generated by Prime or any of its suppliers or co-mans which in any manner concern Agrovana's CWP, including any CAPA's which Agrovana prepared in response to Prime's complaint.

*Prime's Response: Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith.*

Argument: CAPA is defined in the Requests as a Corrective and Preventive Action Report (Ex. 1 at 4), which food manufacturers create whenever a problem or issue arises with the

company's standards or with the quality of the product. Third parties have produced multiple instances of CAPA's being generated that Prime has not produced.[11] Prime should have no difficulty producing these documents, as they should be in organized files, as required for compliance with federal law.

Agrovana's Request for Production No. 26:  All internal communications concerning any CAPA's which Agrovana sent to you.

*Prime's Response:*  *Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith.*

Argument:  These internal communications are relevant for the same reason that the CAPA's themselves are, but despite Prime's lack of objection it has produced virtually no responsive documents. It should therefore be ordered to do so.

Agrovana's Request for Production No. 27(E):  For all Remaining Product (as that term is defined above), please provide . . .  [a]ll documents evidencing or containing any information about any communications you had before September 19, 2024 with any bottler, co-man, or other facility about the preservation of Remaining Product.

*Prime's Response:*  *Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith.*

Argument: September 19, 2024 is when Agrovana filed this lawsuit. Nevertheless, Prime has apparently failed or refused to produce any documents instructing bottlers or warehouses with physical custody of the product to ensure that it was maintained in the same condition it was in when received. If there are no responsive documents, as now appears likely,[12] Prime should be required to amend its responses to say so in plain English.

Agrovana's Request for Production No. 32(B):  All documents that in any manner concern the allegations of your Amended Counterclaims, including but not limited to . . . [a]ll internal communications concerning Prime's alleged "rejection and/or revocation of acceptance of CWP," as alleged in paragraph 6.

*Prime's Response:*  *Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to the documents produced herewith.*

Agrovana's Request for Production No. 32(C):  All documents that in any manner concern the allegations of your Amended Counterclaims, including but not limited to . . . [a]ll

---

[11] For example, WGP produced reports and correspondence concerning the presence of foreign contaminants in Prime's finished product, which was attributed to consumer error in opening the product (each bottle is encased in a plastic labeling wrapper).

[12] Up to this point, no third party has produced any documents which amount to a litigation hold from Prime on product that it was storing or which otherwise would be responsive to this Request.

documents which concern or contain any information about Agrovana's alleged "failure to comply with minimum safety and quality standards, including the delivery of CWP containing foreign substances," as alleged in paragraph 7. Your answer should include but not be limited to all documents on which you based your purported "rejection and/or revocation of acceptance".

*Prime's Response:  Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to its responses to Requests Nos. 4 and 15(M).*

Agrovana's Request for Production No. 32(D):  All documents that in any manner concern the allegations of your Amended Counterclaims, including but not limited to . . . [a]ll documents that evidence or contain any information about "the significant quality control issues revealed by Prime's inspection of Agrovana's CWP," as alleged in paragraph 9. Your answer should include all documents relating to any inspection which Prime performed upon Agrovana's CWP.

*Prime's Response:  Subject to and without waiving its General Objections and Reservations, Prime/Congo refers Agrovana to its responses to Requests Nos. 4 and 15(M).*

Argument: Request Nos. 32(B)-(D) all demand that Prime produce the information which supports statements made in its claims, and specifically to produce documents related to its ostensible 'rejection' of Agrovana's product. It is literally impossible that Prime could have done this without extensive study and consideration, which would undoubtedly be reflected in written communications, memoranda, and the like. Prime knows better than to object to these requests, but it has produced almost nothing in the way of responsive documents. Accordingly, the Court should enter an order compelling Prime to supplement its deficient production responsive to the Requests, including conducting a proper search for responsive documents.

## III.  Prime's Irrelevance and Ease of Access Objections are Simply Wrong, and Prime Should be Ordered to Produce Materials Responsive to Request Nos. 28 through 31

Prime also flatly refuses to produce entire categories of documents in response to Requests Nos. 28 through 31.[13] Prime lists several conclusory objections in doing so, but only advances arguments based on (1) relevance, or (2) relative ease of access grounds. However, Prime confuses persuasive weight and Prime's theory of the case with relevance. Prime is free to *argue* that the requested materials should not be given weight at trial or dispositive motions leading up to it. However, and as made fully clear below, each requested category is relevant to

---

[13] Save for 28(D) and (G), as to which Prime claims no responsive documents exist. However, Prime should be ordered to complete a full, diligent search regarding the Requests overall, including 28(D) and (G), as described in Section I, *supra*.

Agrovana's theory that Prime (1) concocted pretextual complaints about Agrovana's CWP to avoid its contractual obligations after the market for Prime's product foundered, and (2) then doubled-down and pursued a baseless counterclaim to claw back proper contract payments it had already made to Agrovana:

Request No. 28:  For all Finished Product (as that term is defined above), please provide the following.

A.  Actual monthly sales figures for each product from 2022-present;

*Prime's Response:  OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to this Request as overly broad, harassing, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Prime's actual monthly sales figures is unrelated to whether the Disputed Lots of Agrovana's CWP has Quality Defects and whether Agrovana is entitled to payment from Prime for the Disputed Lots.  Prime/Congo will not produce documents responsive to this Request.*

B. All projected sales figures for each product from 2022-present;

*Prime's Response:  OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to this Request as overly broad, harassing, not relevant to any party's claims 26 or defenses, and not proportional to the needs of the case. Prime's projected sales figures is unrelated to whether the Disputed Lots of Agrovana's CWP has Quality Defects and whether Agrovana is entitled to payment from Prime for the Disputed Lots.  Prime/Congo will not produce documents responsive to this Request.*

C. All complaints or comments about any Finished Product received from any source whatsoever;

Prime's Response:  *OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to this Request as overly broad, harassing, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Whether Prime/Congo received complaints about Finished Product generally is irrelevant to whether Agrovana's CWP had Quality Defects because the Quality Defects would have been detected during the manufacturing of Prime beverages and therefore would have been identified prior to bottling. Even assuming such complaints were relevant to any party's claims or defenses, this Request applies broadly to "all" complaints or comments received from "any" source, rather than complaints limited to those that Prime attributes to Agrovana's CWP. _Prime/Congo will not produce documents responsive to this Request.*

E. All documents evidencing or containing information about Prime's customer complaint SOP's;

*Prime's Response:  OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to this Request on the grounds that it is not relevant to any party's claims or defenses and not proportional to the needs of the case. Prime's SOPs for customer complaints are irrelevant to whether Agrovana's CWP has Quality Defects.  Prime/Congo will not produce documents responsive to this Request.*

F. Any CAPA, trend analysis, or compilation of complaints received from customers about Prime's products;

*Prime's Response:  OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to this Request as overly broad, harassing, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Whether Prime/Congo received complaints about Prime products generally – as opposed to Finished Product containing Agrovana's CWP – is irrelevant to whether Agrovana's CWP had Quality Defects.  Prime/Congo will not produce documents responsive to this Request.*

Request No. 29:  The complaint and the answer and any counterclaim or third-party claim for every lawsuit in which Prime or Congo or any related party is a plaintiff or defendant. Your responses should encompass all lawsuits that were pending either (1) as of the date that Agrovana filed its complaint or (2) as of the date that you are responding to these document requests.

*Prime's Response:  OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to Request for Production No. 29 as overly broad, harassing, irrelevant to the Parties' claims and defenses, and not proportional to the needs of the case. Information from other lawsuits where Prime/Congo are parties is irrelevant to the narrow issues in this case – whether the Disputed Lots of Agrovana's CWP had Quality Defects and whether Prime owes Agrovana the sums it alleges it is owed. The parties' relative access to this information is also equal because any court documents would be public record.  Prime/Congo will not produce documents responsive to this Request.*

Request No. 30:  All communications between Prime and any public relations firm which in any manner concerns this litigation, and all communications from the public relations firm to any newspaper or other media which in any manner concern this litigation.

*Prime's Response :  OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to this Request as overly broad, harassing, irrelevant to the Parties' claims and defenses, and not proportional to the needs of the case. Communications between Prime and any public relations firm and communications from the public relations firm to any media outlet is not relevant to whether Agrovana's CWP had Quality Defects and whether Prime owes Agrovana the sums it alleges it is owed.   Prime/Congo will not produce documents responsive to this Request.*

Request No. 31:  All social media posts by any officer, director, or employee of Prime which in any manner concern this litigation or Agrovana's product.

*Prime's Response:  OBJECTION. In addition to its General Objections and Reservations, Prime/Congo objects to this Request on the grounds that it is irrelevant to the Parties' claims and defenses and not proportional to the needs of the case.  Social media posts by officers, directors, or employees of Prime concerning this litigation is unrelated to whether Agrovana's CWP has Quality Defects.  The Parties' relative access to social media posts would also be equal given that Agrovana could simply search the internet for social media posts related to this Lawsuit. Prime/Congo will not produce documents responsive to this Request.*

Here too regarding Request Nos. 29 through 31, Prime lists several conclusory objections, but only advances argument against production on the basis of relevance, or in more limited circumstances, equal access to the requested materials.

Specifically, Prime argues that the operative pleadings for contemporaneous matters in which Prime, Congo, or a related party is a party (Request No. 29) is irrelevant to the present matter, or that Agrovana has equal access to all responsive pleadings regardless. This is untrue – these matters may be sealed,[14] or otherwise publicly unknown or difficult to identify, but if they exist Prime and Congo already know of and can easily group them; Agrovana is not so advantageously situated to assemble this information. The requested materials are also plainly relevant – for example as impeachment evidence if Prime or Congo take positions contrary to those it advances in this matter, or claims that documents do not exist or refuse to produce them in this matter, but do so in another matter.

Prime's objections to Request Nos. 30 and 31 fail for the same reasons. Communications between Prime and public relations firms concerning this case, and in turn communications a public relations firm may have with a media outlet (Request No. 30) are equally relevant for impeachment purposes, or perhaps even as admissions by party-opponent. Social media posts by an officer, director, or employee of Prime (Request No. 31) may similarly be private or unknown, and Prime and its officers, directors, and employees are exclusively situated to confirm whether and where responsive posts may exist. If responsive posts do exist, they would likewise be relevant on their face as impeachment evidence if inconsistent with statements Prime and its witnesses advance during this litigation, or also perhaps as admissions if posted by a person who can bind the entity.

Finally, customer complaints (Requests 28(C) – (F)) are also probative and discoverable. Prime claims that Agrovana's product contained 'foreign material'.  Since CWP is by far the largest ingredient in Prime's beverages other than water, it follows that there should have been some complaints about such materials, if they in fact existed and were material.  The existence (or non-existence) of such complaints should therefore be ordered produced.

---

[14] And even so may still be properly disclosed in this litigation depending on the particular protective orders at issue.

WHEREFORE, Agrovana respectfully moves that this Honorable Court ORDER Prime Hydration, LLC and Congo Brands LLC to:

(1) Conduct a diligent search for documents responsive to Plaintiff and Counterclaim Defendant Agrovana, LLC'S ("Agrovana") First Set of Requests for Production of Documents (the "Requests") – including reviewing internal documents to determine appropriate search terms reasonably designed to capture all responsive documents, and iteratively repeating this process as necessary to the extent newly reviewed documents indicate that additional, altered, or modified search terms may reasonably identify additional responsive documents for production;

(2) File, within 10 days, a discovery plan with the Court outlining the steps that Prime and Congo intend to take to ensure that all documents responsive to Paragraphs 5 and 6 below are located and produced;

(3) Produce Microsoft Teams messages responsive to Agrovana's Requests in a comprehensible form;

(4) Download and produce text messages from the telephones of Prime's leadership responsive to Agrovana's Requests;

(5) produce documents responsive to Agrovana's Requests Nos. 3, 4, 5, 14, 20, 25, 26, 27(E), and 32(B)-(D), including by way of summary:

- All documents and communications with Agrovana about the terms under which Prime would agree to purchase Agrovana's Coconut Water Powder ("CWP"), including negotiations and modifications thereof (Request Nos. 3 and 4);

- All documents concerning the approval, evaluation, or quality of Agrovana's CWP (Request Nos. 5, 14, 32(C), 32(D)), including (1) all 2023 or 2024 internal communications concerning (i) Prime's specifications for CWP or (ii) Agrovana's proposed revised specifications communicated in Agrovana's letter of September 13, 2024 (Request No. 20), and (2) internal communications Prime's alleged quote rejection and/or revocation of acceptance of CWP (Request No. 32(B));

- All Corrective and Preventive Action ("CAPA") reports generated by Prime or any of its suppliers or co-mans concerning Agrovana's CWP, including communications concerning the same (Request Nos. 25 and 26);

- All communications before September 19, 2024 with any bottler, co-manufacturer ("co-man"), or other facility about the preservation of "Remaining Product" (Request No. 27(E));

(6) produce documents Responsive to Agrovana's First Set of Requests for Production of Documents Nos. 28 through 31, including by way of summary:

- All requested sales projections and figures, CAPA reports, and complaints and related Standard Operating Procedures ("SOP's") (Request No. 28(A)-(C), (E)-(F));

- All complaints and responses, including counter and third-party claims, for every lawsuit in which Prime, Congo, or a related party is a plaintiff or defendant (Request No. 29);

- All communications concern this litigation between (1) Prime and any public relations firm, and (2) the public relations firm to any media outlet (Request No. 30); and

- All social media posts by any officer, director, or employee of Prime concerning this litigation or Agrovana's CWP (Request No. 31).

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.1(d), Agrovana states that it believes oral argument would be of assistance to the Court in deciding this motion.

Respectfully Submitted,
AGROVANA, LLC
By its Attorney,

*/s/ Edward Foye*
Edward Foye (BBO#562375)
Raymond P. Ausrotas (BBO #640315)
Patrick C. McCooe (BBO# 686223)
ARROWOOD LLP
One Bowdoin Square, Suite 300
Boston, MA  02114
Tel:  617-849-6200 | Fax: 617-849-6201
Email:  *efoye@arrowoodllp.com*
        *rausrotas@arrowoodllp.com*
        *pmccooe@arrowoodllp.com*

Dated: July 28, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025 a true and correct copy of the above document was served upon the attorneys of record by electronic delivery.

***Attorneys for Congo Brands LLC and Prime Hydration, LLC***

| | |
|---|---|
| Mark A. Berthiaume (BBO #01715) | Peter M. Cummins |
| Alison T. Holdway (BBO #690569) | (*pro hac vice*) |
| GREENBERG TRAURIG, LLP | D. Christopher Robinson |
| One International Place, Suite 2000 | (*pro hac vice*) |
| Boston, Massachusetts 02110 | FROST BROWN TODD LLP |
| Tel.: (617) 310-6000 | 400 West Market Street, Suite 3200 |
| Email: *berthiaumem@gtlaw.com* | Louisville, Kentucky 40202 |
| *alison.holdway@gtlaw.com* | Tel.: (502) 589-5400 |
| | Email: *pcummins@fbtlaw.com* |
| | *crobinson@fbtlaw.com* |

*/s/ Edward Foye*

_____

Edward Foye (BBO#562375)