UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AGROVANA, LLC,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>CONGO BRANDS LLC,<br><br>    Defendant,<br><br>and<br><br>PRIME HYDRATION, LLC,<br><br>    Defendant and Counterclaim-Plaintiff. | Civil Action No. 1:24-cv-12400 |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT AGROVANA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

**EXHIBIT 5**



One Bowdoin Square
Suite 300
Boston, MA 02114
P: 617-849-6200
F: 617-849-6201

Edward Foye
(617) 849-6216
efoye@arrowoodllp.com
www.arrowoodllp.com

June 10, 2025

**VIA ELECTRONIC MAIL**

Peter M. Cummins, Esquire
FROST BROWN TODD LLP
400 West Market Street, Suite 3200
Louisville, KY 40202
*pcummins@fbtlaw.com*

   RE: *Agrovana, LLC vs. Congo Brands LLC and Prime Hydration, LLC* | USDC | Civil Action No. *1:24-cv-12400*

Dear Peter:

  This letter is to follow up on our conversation from last Friday regarding the document production of your clients ("Congo"). This letter does not deal with the issue of Congo's failure to produce text messages by its leadership, its production of highly incomplete internal Teams chats or other subjects that have been separately conferenced. Rather, this letter is intended to further our discussion regarding the scope of Congo's document search and its subsequent production.

  As I understand it, Congo did not do a custodian specific search of its email and document retention system, but rather queried its entire system for certain terms. The search was for documents containing the terms *Agrovana* or "*coconut water powder*" or *CWP* or "*Tim Panagopoulos*" or "*Hevan Patel*." Once these emails were collected, Frost Brown and Todd reviewed the documents to remove privileged items and false hits. You have invited me to suggest additional search terms, and have told me that your client will consider searching for them.

  At this point, I do not think that is a productive way of proceeding. As a threshold matter, it seems unlikely that the search was, in practice, as broad as what you outlined to me. Other than water, CWP is the largest ingredient in Congo's beverages and over the last few years it has been shipped to bottlers and co-manufacturers across the country. There should have been at least hundreds of documents tracking the movement of the product from place to place, and these communications are responsive to Agrovana's requests. However, very few such documents have been produced. Prime has also failed to produce documents that must exist given the assertions of its Counterclaim or given the correspondence which we have received from your firm. To take one example, virtually no material has been produced relating to alleged comprehensive inspection of CWP lots at Congo-controlled storage facilities, as claimed in Christopher Robinson's August 24 letter. The same letter talks about third-party tester Eurofins' "statistical sampling and testing" procedures, but other than multiple copies of the same Eurofins report on a single lot of product, virtually nothing has been produced. There has been almost nothing in the way of communications

Page 2
June 10, 2025

with and among leadership regarding the supposed contamination of the product. There have also been no communications among leadership about the problems with Congo's sales and resultant cash flow issues, which Mr. Bryant in early 2024 explicitly told Mr. Panagopoulos was the reason that Congo wanted to reduce its purchases of CWP. These are only a few of the shortcomings in the production.

      The offer to search additional terms is not sufficient. In the nature of the case, we cannot know what language that Congo and its co-manufacturers, bottlers, and warehouses used in discussing the supposed deficiencies in the product. Discussions about Congo's sales issues are unlikely to have been gathered by the queries used, and most of the words that could be reliably expected to be included in such communications are too common to be the basis of any effective keyword-based search procedure. Importantly, there are a relatively small number of individuals who would have been involved in these exchanges. The great majority of responsive documents occurred within a very short time frame (February-August 2024) and most of the rest are from 2023. This is not a case where there are an unmanageable number of custodians or where those custodians could not be relied upon to produce relevant information if someone told them what to search for.

      Congo's asserted damages exceed $3 million. The company has discovery obligations commensurate with those claims. I trust that Congo will agree that it has an obligation to produce relevant documents, that the search method it used was inadequate to the purpose, and that it will go back to its employees to instruct them on what documents should be forwarded to your firm for review and production, and that it will do in a time frame consistent with our current discovery schedule. If Congo is not willing to do so, Agrovana intends to move for a court order requiring Congo to do so and to move to preclude any evidence at trial which Congo does not produce.

      Finally, one other matter that I did not raise at the conference, but which I think is important. Please produce the internal messages in native format. The past production of excerpted snippets, even if inadvertent, raises issues about the integrity of the production, and I am told that our consultants require native format documents to ensure that the new version has also not been inadvertently excerpted from a larger chain. Thanks in advance for your expected co-operation, and if this request poses any technical issues I will be happy to have our IT consultants speak directly to yours.

                              Best regards,

                              */s/ Edward Foye*
                              Edward Foye

EF/lp