UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AGROVANA, LLC | ) | |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONGO BRANDS LLC | ) | Civil Action No. 24-12400-FDS |
| | ) | |
| Defendant, and | ) ) | |
| | ) | |
| PRIME HYDRATION, LLC, | ) | |
| | ) | |
| Defendant and Counterclaim Plaintiff. | ) ) | |
| | ) | |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**
[Docket No. 102]

August 10, 2026

Boal, M.J.

Plaintiff and Counterclaim Defendant Agrovana, LLC, brings this action against

Defendants Congo Brands, LLC, and Prime Hydration, LLC (collectively, "Prime"), for breach

of contract and violation of M.G.L. c. 93A, § 11, arising out of a contract for the sale of goods.

Docket No. 25.  Prime Hydration in turn brought counterclaims based on the sale by Agrovana of

defective product.  Docket No. 28.  Agrovana filed a motion to compel Prime to certify certain

information regarding the lots on which its alleged damages are based and also to strike damage

1

claims related to certain product lots.[1]  Docket No. 102.  For the following reasons, I grant in part and deny in part the motion.

### I.    BACKGROUND AND PROCEDURAL HISTORY

This case involves a contract dispute for the sale of coconut water powder ("CWP").  In 2022, Prime launched a brand of sports and energy drinks.  Docket No. 25 ¶ 5.  In mid-2022, Prime contracted with Agrovana to deliver, among other products, CWP, a component of Prime drinks.  Id. ¶ 7.  In February 2024, Prime raised, for the first time, quality issues with the CWP, complaining that it contained contaminants and other flaws.  Id. ¶¶ 16-17; Docket No. 28 ¶¶ 16-17.  In August 2024, Prime, citing quality issues, informed Agrovana that it would not accept further deliveries.  Docket No. 25 ¶¶ 19-20.  Despite Agrovana's assurances that it would review its product standards, Agrovana alleges that Prime refused eight subsequent shipments of CWP and breached an April 2024 accord by failing to accept additional CWP shipments scheduled between December 2024 and March 2025.  Id. ¶¶ 21-23.

On September 19, 2024, Agrovana filed a complaint against Prime.  Docket No. 25 ¶¶ 24-47.  On January 21, 2025, Prime Hydration filed a counterclaim against Agrovana, seeking over $20 million in damages based on allegations that the CWP was contaminated with foreign material and suffered from severe clumping due to defective packaging provided by Agrovana.  Docket Nos. 28; 105 at 3.

Agrovana served its first set of interrogatories on February 28, 2025, and its first set of document requests on March 31, 2025.  Docket No. 105-5.  These requests, among other things, sought information about the location, storage, movement, and disposition of CWP through March 2025.  See, e.g., id. at 28, 30.

---

[1]  On July 17, 2026, Judge Saylor referred this motion to the undersigned.  Docket No. 106.

Since June 2025, the parties attempted to coordinate inspections of the subject CWP product.  See Docket Nos. 105 at 5-6.  See, e.g., 105-9 at 6, 8-15.[2]  On February 20, 2026, Prime moved for authorization to dispose of the subject CWP.  Docket No. 84.  On March 24, 2026, Judge Saylor ordered the product to be preserved until June 19, 2026.  Docket No. 89.

Fact discovery closed on April 17, 2026.  Docket No. 89.  Following the discovery deadline, disputes emerged regarding Agrovana's efforts to inspect the CWP lots underlying Prime Hydration's damages calculation.  Docket No. 102 at 6.  After a June 17, 2026, status conference, Docket No. 98, Judge Saylor directed the parties to confer regarding inspection logistics and to file a motion if the disputes remained unresolved.  Docket No. 102 at 6.  Judge Saylor further ordered that the product be preserved until August 14, 2026.  Docket No. 98.

On July 2, 2026, Agrovana filed the instant motion to compel, seeking an order compelling Prime to provide a certified inventory, as well as complete location and chain of custody records for every CWP lot for which Prime Hydration seeks damages.  Docket No. 102 at 1-2.  Agrovana also seeks to strike Prime Hydration's damages claims related to CWP stored at the Manna and Black Mountain warehouse facilities due to lack of inspection access.  Id. at 2. Prime filed an opposition on July 16, 2026.  Docket No. 105.  Agrovana filed a reply in support of its motion to compel on August 3, 2026.  Docket No. 111.  On August 3, 2026, Prime filed a sur-reply.  Docket No. 112.

On August 4, 2026, this Court held a hearing on the motion.  Docket No. 113.  At that hearing, Agrovana explained that the information it was seeking was a certified current,

---

[2] At oral argument, the parties informed the Court that three inspections had taken place or were scheduled:  (1) DSV Elgin – December 5, 2025; (2) Prep Partners – July 22, 2026; and (3) Savannah River – August 6, 2026.

complete, and accurate inventory, including physical location, and accessibility for every lot underlying Prime Hydration's damages claim,[3] as well as chain of custody information for certain batches or lots that have moved.  See Docket No. 105-6 at 5-6.  This Court will refer to all of this information collectively as the "Requested Information."

A sworn July 16, 2026, declaration from Congo Brands, LLC, Vice President Wyatt Bryant provided the most recent information about the status of the lots.  See Docket No. 105-10. Specifically, Bryant attested that CWP lots located in the Manna Anaheim, OL, Unix, Elgin,[4] and WGP facilities were either destroyed or "very likely [were] sent out for destruction without notice to Prime."  Id. at 1-2.  The CWP from these facilities represents around 4.4% of the total damages sought by Prime.  Id. at 2.  Bryant also stated that "[t]he rest of the CWP inventory has largely remained in place since October 2025," apart from several pallets that have been either consolidated at a central warehouse or shipped abroad to India.  Id.

Regarding the Scissors Lot,[5] Bryant attests that such CWP product involved three purchase orders, two of which went to the United States, and one of which went to Europe.  The European shipment moved from Rotterdam, and then to Poland, Germany and Spain.  Bryant further attests that the product shipped to Europe "remained unused at Refresco's three locations" in September 2024; however, he fails to attest to their current location.  Id. at 3.

---

[3] Such lots include, but are not limited to:  Disputed Lots, as that term is defined in Docket No. 105-6 at 5; lots identified in Exhibit A, a chart that Prime produced on October 6, 2025, as part of its Supplemental Verified Interrogatories; lots referenced in "Transfers of Agrovana coconut from 3PL to production locations"; and lots referenced in response to Prime's Answers to Interrogatories.

[4] Bryant asserts that "representative sample boxes" from Elgin were retained for inspection at Prime's Kentucky warehouse.  Docket No. 105-10 at 2-3.

[5] The Scissors Lot refers to Lot No. NVR/CWP-2430K in which scissors were found in one box from the European shipment.  Docket No. 105-10 at 2-3.

Finally, he states that with respect to the United States shipments, one went to Dallas-Fort Worth, and then Gibson, Oklahoma.  That shipment then moved to Stockton, California and then Missouri in January 2026 and is available for inspection.  The other United States shipment went to Atlanta and then to a facility known as DSV Elgin in South Carolina.  Several boxes from the Scissors Lot went to Prime's Kentucky headquarters in or around February 2026.  Id. at 3.

II.    STANDARD OF REVIEW

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information."  Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)).  To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Factors that must be considered in weighing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.

"[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant."  Torres v. Johnson & Johnson, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citation omitted).  "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper."  Id. (citation omitted).

III.    ANALYSIS

5

Agrovana's motion seeks two types of relief:  (1) production of the Requested Information; and (2) the striking of Prime Hydration's damages attributable to product that is or was located at the Manna and Black Mountain warehouse facilities.  I address each request in turn.

*A.  The Requested Information*

Agrovana seeks a court order compelling Prime to produce the Requested Information. Docket No. 102 at 1-2, 12.  Prime argues that this request is untimely and disproportionate to the needs of the case.  Docket No. 105 at 1-2.

Prime Hydration is seeking more than twenty million dollars in damages based on specific CWP batches and lots.  See Docket Nos. 28; 102 at 2; 105 at 3.  The Requested Information is therefore central to that damages claim.  The location, quantity, and accessibility of those lots are relevant to Agrovana's ability to test the factual and evidentiary foundations of Prime Hydration's damages theories.  In addition, Prime had a duty to preserve the lots, which it recognized by filing a motion seeking to dispose of the lots.  See Docket No. 84.  The movement and potential destruction of lots also warrant further discovery.  Agrovana has, therefore, met its burden to show its requested inventory information is relevant and not disproportionate to the facts of the case.

Agrovana's request is also timely.  Although fact discovery closed on April 17, 2026, Agrovana's request may be properly viewed as a request for supplementation of information previously ordered by this Court.  See Docket Nos. 81 at 3-4 (ordering Prime to produce documents concerning disposition or movement of CWP).  This supplementation is particularly necessary in light of Prime's shifting inventory representations and its expert theory blaming packaging deficiencies for foreign materials and clumping.  See Docket No. 105 at 5-6.  While

defendants' counsel argued that Prime Hydration's clumping damages analysis is not based on all of the lots, its counsel further explained that its expert extrapolated Prime Hydration's damages based on the expert's analysis of the percent of damaged product.  Agrovana is entitled to test this theory and therefore may need all of the lots to do so.

Accordingly, within two weeks of this Order, Prime is ordered to provide the Requested Information including by updating the charts described above, for all of the product listed in those charts, and provide similar information for any lots for which it is claiming damages, including lots supporting any percentage-based damages theory, that are not included in the existing charts.[6]  It also must provide a certification under penalty of perjury as to the information's accuracy.  Should Prime elect to waive damages with respect to any particular lot, it must so certify and then need not produce the information ordered by the Court for those lots. Further, any inspection of any lots must occur before September 30, 2026.  All product must be preserved until September 30, 2026.  Should the parties agree that any lots may be destroyed prior to September 30, 2026, they must seek Judge Saylor's permission to do so.

B.  *Preclusion Of Damages*

Agrovana asks this Court to strike from Prime Hydration's damages any amounts attributable to CWP stored at the Manna and Black Mountain warehouse facilities.  Docket No. 102 at 12.  Agrovana argues that Prime has failed to provide inspection access to those facilities despite representing on May 26, 2026, that only one week's notice was required to do so.  Id. at 9.

---

[6] At oral argument, Prime confirmed that it would be able to do so in that time frame, if so ordered by this Court.

This Court finds Agrovana's request premature.  Rather, the parties are still working to schedule inspection dates and times.  The first step to resolving this issue is Prime's production of the information described above.  This Court notes that Prime has represented that some of the subject material at Manna and other facilities may have been disposed.  Docket No. 105-10. Nevertheless, further information is needed before Agrovana's request is ripe for decision by the Court.

IV.    CONCLUSION

For the reasons set forth above, I grant in part and deny in part the motion.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE